IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

| | |
|---|---|
| CIRILO MARTINEZ-GARCIA, FABIOLA FUENTES-NIETO, FRANCISCO CHAVEZ-RUBIO, GENARO GACHUZ-REYES, EDUARDO GACHUZ-GOMEZ, and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> PLANTATION SWEETS, INC., and RONALD A. COLLINS, <br><br> Defendants. | CIVIL ACTION NO. _____ |

## COMPLAINT

### I. PRELIMINARY STATEMENT

1. Plaintiffs are migrant agricultural workers recruited by Defendants in Mexico in 2011 and 2012 to work for Defendants in and around Tattnall County, Georgia. Plaintiffs file this action on behalf of themselves and other similarly situated workers to secure and vindicate their rights under the Fair Labor Standards Act ("FLSA") and under Georgia contract law.

2. Plaintiffs left their homes and families and spent considerable money and effort to obtain work visas and travel to Georgia to work for Defendants.

3. Defendants violated the FLSA by failing to pay each Plaintiff and other similarly situated worker at least the required average minimum hourly wage for every compensable hour of labor performed in a workweek, including by failing to reimburse their pre-employment expenses as required by law.

4.  Defendants breached Plaintiffs' employment contracts by failing to pay the contractual minimum wage for all hours worked.

5.  Plaintiffs seek their unpaid wages, liquidated damages, actual, incidental, consequential, and compensatory damages, and pre- and post-judgment interest.

## II. JURISDICTION AND VENUE

6.  This Court has jurisdiction of this action pursuant to:

    a.  28 U.S.C. § 1331 (Federal Question);

    b.  29 U.S.C. § 1337 (Interstate Commerce);

    c.  29 U.S.C. § 216(b) (FLSA); and

    d.  28 U.S.C. § 1367 (Supplemental).

7.  This Court has supplemental jurisdiction over the state law claims because they are so related to Plaintiffs' federal FLSA claims that they form part of the same case or controversy under Article III, Section 2 of the U.S. Constitution.

8.  Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and S.D. Ga. Local Rule 2.1(b), because a substantial part of the claims arose in the Southern District of Georgia and because the Defendants reside there.

## III. PARTIES

9.  At all times relevant to this complaint, Plaintiffs and their similarly situated co-workers were H-2A agricultural guestworkers admitted into the United States under the H-2A program, 8 U.S.C. § 1188 and 20 C.F.R. §§ 655.0 – 655.113 (2008).

10. Plaintiffs' FLSA consent forms are attached as Exhibit A.

11. Plaintiffs and Opt-In Plaintiffs were Defendants' employees as defined by the H-2A regulations, 20 C.F.R. § 655.103(b).

12. At all times relevant to this action, Defendant Plantation Sweets, Inc., was and is a corporation in good standing, duly formed under and in accordance with the laws of the State of Georgia. Plantation Sweets maintains a principal place of business in Cobbtown, Georgia.

13. Defendant Plantation Sweets may be served with process through its registered agent, Glen Cheney, at 100 Memorial Drive, Reidsville, Georgia 30453.

14. Defendant Ronald A. Collins is the Chief Executive Officer, Chief Financial Officer and Secretary of Plantation Sweets, and may be served with process at 1652 Ronny Collins Road, Cobbtown, Georgia 30420.

15. Defendant Collins is the day-to-day manager of Plantation Sweets and establishes its business practices.

16. Defendants hired crew leader Maria Perez to harvest Plantation Sweets' crops from April through July of 2011.

17. Defendants hired crew leader Dahlia Guerrero to harvest Plantation Sweets' crops from April through July of 2012.

18. Harvesting onions and corn was an integral part of Plantation Sweets business of growing, marketing, and selling produce in 2011 and 2012.

19. Defendant Plantation Sweets was an employer, as defined by the FLSA, of Plaintiffs and other similarly situated workers, because it suffered or permitted Plaintiffs and other similarly situated workers to work.

20. Defendant Plantation Sweets was an employer, as defined by the H-2A regulations, 20 C.F.R. § 655.103(b), of Plaintiffs and other similarly situated workers, because it had a place of business in the U.S. and a means by which it could be contacted for employment,

had the ability to control the work of Plaintiffs and other similarly situated workers, and had a valid Federal Employer Identification Number.

21. Defendant Collins was an employer, as defined by the FLSA, of Plaintiffs and other similarly situated workers, because he suffered or permitted Plaintiffs and other similarly situated workers to work.

22. Defendant Collins was an employer, as defined by the H-2A regulations, 20 C.F.R. § 655.103(b), of Plaintiffs and other similarly situated workers, because he had a place of business in the U.S. and a means by which he could be contacted for employment, had the ability to control the work of Plaintiffs and other similarly situated workers, and had a valid Federal Employer Identification Number.

23. Crew leader Maria Perez was Defendants' employee in 2011 as defined by the FLSA.

24. Crew leader Dahlia Guerrero was Defendants' employee in 2012 as defined by the FLSA.

25. All allegations in this Complaint pertaining to the acts or omissions of crew leader Maria Perez were within the scope of her authority as an agent of, and as such are attributable to, Defendants.

26. All allegations in this Complaint pertaining to the acts or omissions of crew leader Dahlia Guerrero were within the scope of her authority as an agent of, and as such are attributable to, Defendants.

27. At all times relevant to this Complaint, Defendants were engaged in the harvesting and production of Vidalia onions, corn, and other produce in Georgia for sale in interstate commerce.

## IV.  THE H-2A PROGRAM

28. The H-2A program was created by 8 U.S.C. §1188 and is implemented pursuant to the regulations found at 20 C.F.R. §§ 655.0-655.185 (2010). The H-2A program authorizes the lawful admission of temporary, non-immigrant workers to perform agricultural labor or services of a temporary nature.  The H-2A regulations were reorganized and amended effective March 15, 2010.  75 Fed. Reg. 6884 (Feb. 12, 2010).

29. Employers, or farm labor contractors working for a fixed site employer, must file a temporary labor certification application with the U.S. DOL's Employment and Training Administration.  20 C.F.R. § 655.130.  The application has to include a job offer, known as a "job order," that complies with the requirements of 20 C.F.R. § 655.122.  The job order contains the terms to be offered to both foreign H-2A workers and domestic workers throughout the United States.  *See* 20 C.F.R. § 655.121(a)(2).

30. The H-2A employment contracts at issue here incorporate a regulatory definition of employer found at 20 C.F.R. § 655.103(b).

31. The terms and conditions of the job orders, together with the requirements of 20 C.F.R. part 655, constituted Plaintiffs' and Opt-In Plaintiffs' employment contracts. 20 C.F.R. § 655.103(b) (definition of "work contract").

32. The H-2A employment contracts promised that each worker would earn at least the prevailing rate for the crop activity or at least the AEWR [Adverse Effect Wage Rate], or the federal or state minimum wage, whichever is higher, for all hours worked in the payroll period. Ex. B at *8; Ex. C at *6.

33.     The employment contracts promised to pay the applicable AEWR, which was $9.12 in 2011 and $9.39 in 2012.  Exs. B at 3 and C at 3; 76 Fed. Reg. 11286-87 (Mar. 1, 2011); 76 Fed. Reg. 79711-12 (Dec. 22, 2011).

34.     The employment contracts contained a promise to "comply with applicable Federal and State minimum wage. . . and other employment related laws," including the Fair Labor Standards Act. *See* Ex. B at 11; Ex. C at *10; 20 C.F.R. § 655.135(e).

## V.  STATEMENT OF FACTS

35.     Defendants hired Perez and Guerrero to furnish labor to harvest Defendants' crops for the 2011 and 2012 seasons, respectively.

36.     Crew leader Maria Perez, in consultation with Plantation Sweets, filed job order number GA 7918774, proposing to employ 74 H-2A workers for the period April 1, 2011 through July 16, 2011. A copy of this job order is attached as Exhibit B.

37.     Plaintiffs Cirilo Martinez-Garcia, Fabiola Fuentes-Nieto, and Francisco Chavez-Rubio were employed under the terms of the job order attached as Exhibit B.

38.     Crew leader Perez's job order was only for performing work at Defendants' operations.

39.     The job order attached as Exhibit B contains a letter signed by Defendant Collins on Plantation Sweets' letterhead stating Defendant Plantation Sweets' intent to hire Maria Perez and her crew of 74 workers pursuant to job order GA7918774 from April to July 2011 to harvest onions and corn.  Ex. B at 7.

40.     Crew leader Dahlia Guerrero, in consultation with Plantation Sweets, filed job order number GA 8003394, proposing to employ 49 H-2A workers for the period April 6, 2011 through July 21, 2011. A copy of this job order is attached as Exhibit C.

41. Plaintiffs Genaro Gachuz-Reyes and Eduardo Gachuz-Gomez were employed under the terms of the job order attached as Exhibit C.

42. Crew leader Guerrero's job order was only for performing work at Defendants' operations.

43. The job order attached as Exhibit C contains a letter signed by Defendant Collins on Plantation Sweets' letterhead stating Defendant Plantation Sweets' intent to employ Dahlia Guerrero and her crew of 49 workers pursuant to job order GA7918774 from April to July 2011 to harvest onions and corn.  Ex. B at 7.

## Recruitment, Hiring, and Expenses of Plaintiff Workers

44. Defendants through crew leaders Perez and Guerrero recruited the Plaintiffs and other similarly situated workers in Mexico with employment offers to harvest produce in Georgia.

45. The Plaintiffs and other similarly situated workers accepted the employment offers.

46. Defendants subsequently ratified this agreement by employing the Plaintiffs and other similarly situated workers to harvest their crops during the 2011 and 2012 harvest seasons.

47. Plaintiffs and other similarly situated workers incurred various immigration and travel expenses in order to come to work for Defendants' operations in Georgia.

48. Plaintiffs and other similarly situated workers who were supervised by crew leader Maria Perez paid, at their own expense, visa and processing fees in excess of $200 in order to obtain the H-2A visa.

49. In order to comply with the hiring processes, the Plaintiffs and other similarly situated workers traveled, at their own expense, from their homes in the Mexican states of

7

Guanajuato, Hidalgo, and San Luis Potosi to a U.S. Consulate in Monterrey or Nogales, Mexico, for the consular interview necessary to obtain an H-2A visa.

50. Plaintiffs' and other similarly situated workers' travel expenses from their home states to the U.S. Consulates were between approximately $50-$100.

51. Plaintiffs and other similarly situated workers incurred expenses for lodging while they completed a visa application form, attended a consular interview, and waited for their visa applications to be processed and for their visas to be issued.

52. Following the issuance of the H-2A visas, Plaintiffs and other similarly situated workers boarded a bus and paid in excess of $100 to travel from Nogales, Sonora, Mexico or Monterrey, Nuevo Leon, Mexico, to Defendants' operations in Georgia.

53. Plaintiffs and other similarly situated workers each paid a $6 fee for the issuance of the Customs and Border Patrol Form I-94 required to enter the U.S.

54. Plaintiffs and other similarly situated workers were required to pay their own subsistence expenses during their journey from their homes in Mexico to Defendants' operations in Georgia.

55. The expenditures set out in paragraphs 47 through 53 were primarily for the benefit of the Defendants within the meaning of 29 C.F.R. §§ 531.32(c) and 778.217.

56. The expenditures set out in paragraphs 47 through 53 were made before receipt of Plaintiffs' and similarly situated workers' first paychecks in each contract period in which they worked.

57. Defendants failed to reimburse Plaintiffs and similarly situated workers during the first workweek for the costs described in paragraphs 47 through 53, resulting in Plaintiffs' and similarly situated workers' first week wages falling below the minimum wage.

58. Plaintiffs and Opt-In Plaintiffs worked upon farmland owned or controlled by Defendant Plantation Sweets and Defendant Collins.

59. The Plaintiffs and Opt-In Plaintiffs harvested onions and corn, repetitive, rote tasks that require little training.

60. The services rendered by crew leaders' Perez and Guerrero did not require special skills, training or education.

61. Defendants controlled the manner in which crew leaders Perez and Guerrero rendered services for Defendants' operations.

62. Defendants directed and controlled the terms and conditions of Plaintiffs' and Opt-In Plaintiffs' employment by directing the dates and time of work, and directing which fields and portions of fields the Plaintiffs and Opt-In Plaintiffs were to harvest.

63. Defendants directed and controlled the terms and conditions of Plaintiffs' and Opt-In Plaintiffs' employment by determining the amount of Plaintiffs' and Opt-In Plaintiffs' pay through the amounts paid to crew leaders Perez and Guerrero.

64. Crew leaders Perez and Guerrero were hired at specific rates and were not able to negotiate the amounts received from Defendants.

65. Defendants provided equipment and materials necessary for Plaintiffs' work, including boxes or crates, buckets, scissors, and packing materials.

66. A necessary and integral step to Defendants' principal business activity of growing, packing, and marketing Vidalia sweet onions and corn was the Plaintiffs' and their co-workers' work harvesting the produce.

67. Plaintiffs and Opt-In Plaintiffs employed during the corn harvest participated in field crate packing, grading, palletizing, and related work so that the corn was ready for direct customer shipment.

68. Plaintiffs and other similarly situated workers did not receive payment for all compensable hours worked as required by the FLSA and the H-2A employment contracts.

69. Crew leaders Perez and Guerrero were compensated in the same manner by Defendant Plantation Sweets and Defendant Collins, by the weight of onions and quantity of corn harvested, which in turn controlled the amount of compensation paid to Plaintiffs and other similarly situated workers.

70. Defendants' employees and/or agents Maria Perez and Dahlia Guerrero paid Plaintiffs and other similarly situated workers almost entirely on a piece-rate basis, such that Plaintiffs and other similarly situated workers were paid according to the amount of crops they harvested without regard to the number of hours they worked.

71. Defendants did not supplement Plaintiffs' and other similarly situated workers' weekly earnings to ensure that Plaintiffs' and other similarly situated workers' wages averaged at least FLSA minimum hourly wage or the minimum hourly wage set forth in the H-2A employment contracts for all compensable hours worked in the pay period.

72. Defendants have been sued previously and investigated by the U.S. Department of Labor, and thus willingly violated, or showed reckless disregard for, their FLSA obligations.

## COUNT I

### FAIR LABOR STANDARDS ACT

73. Plaintiffs and similarly situated workers who have filed consents to sue in this lawsuit incorporate each of the allegations contained in paragraphs 1 through 72 above by reference.

74. This Count sets forth a claim by Plaintiffs and others similarly situated for damages for Defendants' violations of the FLSA pursuant to 29 U.S.C. § 216(b).

75. As detailed in paragraphs 68 through 71 above, Defendants failed to pay Plaintiffs, and others similarly situated, at least the required average minimum hourly wage for every compensable hour of labor performed in a workweek, as required by 29 U.S.C. § 206(a).

76. The violations of the FLSA resulted, in part, from Defendants' failure to reimburse expenses as detailed in paragraphs 47 through 53 above, which Plaintiffs and others similarly situated incurred primarily for the benefit or convenience of Defendants prior to their first weeks of work.

77. Pursuant to 29 U.S.C. § 216(b), as a result of Defendants' violations of the FLSA set forth in this Count, Plaintiffs and other similarly situated workers are entitled to recover the amount of their unpaid wages and an equal amount as liquidated damages for each workweek in which they were suffered or permitted to work at Defendants' operations and during which they earned less than the applicable minimum wage.

78. Defendants' violations set out in this Count were willful within the meaning of the FLSA.

## COUNT II

### BREACH OF CONTRACT

79. Plaintiffs and similarly situated workers who have filed a consent to sue form incorporate each of the allegations contained in paragraphs 1 through 72 above by reference.

80. This Count sets forth a claim by Plaintiffs and similarly situated workers for declaratory relief and damages for Defendants' breach of the wage provisions of the parties' H-2A employment contracts, as described in paragraphs 32 through 34 above.

81. Defendants, through their employees and/or agents, offered employment on the terms and conditions set out in the 2011 and 2012 job orders.

82. Plaintiffs and similarly situated workers accepted Defendants' offers.

83. Defendants breached the Plaintiffs' and similarly situated workers' H-2A employment contracts by failing to pay the Plaintiffs and similarly situated workers the applicable AEWR for each compensable hour of work in a workweek, as described in paragraphs 70 through 71, above.

84. Defendants also breached the Plaintiffs' and similarly situated workers' H-2A employment contracts by failing to pay Plaintiffs and similarly situated workers at least the applicable federal minimum wage for each compensable hour of work in a workweek, as set forth in paragraphs 70 through 71 above.

85. As a direct consequence of Defendants' breach of the Plaintiffs' and similarly situated workers' H 2A employment contracts, Plaintiffs and other similarly situated workers suffered economic injury.

86. Defendants are liable to Plaintiffs and similarly situated workers for the damages that arose naturally and according to the usual course of things from Defendants' breach, as provided by federal common law and/or O.C.G.A. § 13-6-2, including unpaid wages, damages arising from the delay, and prejudgment interest.

## **PRAYERS FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court grant them the following relief:

(a) Under Count I:

1. Grant judgment against Defendants and in favor of each Plaintiff and similarly situated worker who has filed a consent to sue this lawsuit in the amount of his or her respective unpaid wages as proved at trial, plus an equal amount in liquidated damages, pursuant to 29 U.S.C. § 216(b); and

2. Award Plaintiffs and similarly situated workers who have filed consents to sue in this lawsuit their costs and attorneys' fees pursuant to 29 U.S.C. § 216(b).

(b) Under Count II:

1. Declare that Defendants have breached their employment contracts with Plaintiffs and similarly situated workers who have filed consents to sue in this lawsuit as specified in paragraphs 79 through 86 above;

2. Grant judgment against Defendants and in favor of each Plaintiff and similarly situated worker who has filed a consent to sue in this lawsuit, in the amount of each workers' damages as arose naturally and according to the usual course of things from such breach and such as the parties contemplated, when the contract was made, as the probable result of such breach;

(c) Award Plaintiffs and similarly situated workers who have filed consents to sue in this lawsuit pre- and post-judgment interest as allowed by law;

(d) Cast all costs upon Defendants; and

(e) Award Plaintiffs and similarly situated workers who have filed consents to sue in this lawsuit such further relief, at law or in equity, as this Court deems just and proper.

Respectfully submitted this 13th day of April, 2013,

/s/ Dawson Morton
Dawson Morton
Georgia Bar No. 525985
dmorton@glsp.org
Lisa J. Krisher
Georgia Bar No. 429762
lkrisher@glsp.org
104 Marietta Street NW, Suite 250
Atlanta, GA  30303
Phone:  (404) 463-1633
Fax:     (404) 463-1623

*Attorneys for Plaintiffs*